United States District Court
Eastern District of New York                             2:18-cv-06079

| | |
|---|---|
| Jasmine Brown individually and on behalf of all others similarly situated | |
| Plaintiff | |
| - against - | Complaint |
| Miyoko's Kitchen, Inc. | |
| Defendant | |

Plaintiffs by attorneys allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge: Suffolk county plaintiff

1.    Miyoko's Kitchen, Inc. ("defendant") manufactures, distributes, markets, labels and sells "alternative dairy" products, *viz*, foods that bear the name of dairy – butter, cheese, etc.

2.    The Products are sold to consumers by third parties from stores and online.

3.    The Products' common principal display panel representations include (i) the brand name Miyoko's, (ii) "European Style Cultured Vegan Butter," (iii) Organic, (iv) Melts, Browns, Bakes & Spreads Like Butter and (v) a large yellow stripe down the front of the package.



4.     The representations are misleading because despite representing it is a "form" of butter, the Products lack any milk or dairy ingredients and the functional, nutritional, sensory and organoleptic attributes which consumers associate with butter.

5.     For dairy, consumers use short-hand names like butter to make informed purchasing decisions and expect a certain level of product performance and nutrition in return for their money.

6.     The Products bask in dairy's "halo" by using familiar terms to invoke positive traits - including the significant levels of various nutrients typically associated with real dairy foods.[1]

7.     Consumers in America know that butter is the food product known as butter which is made exclusively from milk or cream, or both, and containing not less than 80% milk fat.

8.     Moreover, the package's main color is golden yellow, the color associated with a fresh pat of butter applied to mashed potatoes or a corn-on-the-cob.

9.     These deficiencies are indicated through the Product's ingredients and nutrition facts.

INGREDIENTS: ORGANIC COCONUT OIL, FILTERED WATER, ORGANIC SUNFLOWER OIL, ORGANIC CASHEWS, ORGANIC SUNFLOWER LECITHIN, SEA SALT, CULTURES.

**Nutrition Facts**
About 16 servings per container,
**Serv. size: 1 tbsp (14g),**
**Calories 90, Total Fat** 10g
(13% DV), Sat. Fat 8g (40% DV),
*Trans* Fat 0g, **Cholest.** 0mg (0% DV),
**Sodium** 60mg (3% DV), **Total Carb.**
0g (0% DV), Dietary Fiber 0g (0% DV),
Total Sugars 0g (Incl. 0g Added Sugars,
0% DV), **Protein** 0g, Vit. D (0% DV),
Calcium (0% DV), Iron (0% DV),
Potas. (0% DV).

---

[1] The present complaint focuses on butter while any subsequent pleadings may focus additional attention towards the other non-dairy products.

10. According to archaeologists, butter was discovered serendipitously by nomadic herdsmen of the Neolithic-era, who attached sacks containing milk to their pack animals, and after days of jostling, the milk would be churned into butter.

11. Since that time, rival food products have sought to dethrone butter as the preferred lipid source to accompany various foods – from potatoes to vegetables to dessert and everything in between, butter has stood the test of time.

12. Consumers prefer butter over its imitators because of its:

- unique and unduplicated taste, owing to more than 120 naturally occurring flavor compounds including methyl ketones and lactones;
- ability to enhance the texture and other qualities of (mashed) potato products;
- mouthfeel, since butter melts at a normal body temperature, while imitators have a higher melting point, resulting in a greasy aftertaste on the palate.

13. The plant-based Product is not butter because it is derived from coconut (lauric) oil and nut ingredients, among others, and lacks any fat derived from cow's milk.

14. Instead, the Products are made from ingredients encompassed by the FDA standard of identity for margarine.[2]

15. This is because margarine is also at least 80% fat but can be made from a mixture of fat and/or oils which may be vegetable in origin.

16. The "optional ingredients" for margarine further track the Product's ingredient list – *viz*, water and vegetable proteins.[3]

17. However, the Products are nutritionally inferior to butter *and* margarine, because they lack Vitamin A, Vitamin D and Calcium, among others.

---

[2] 21 C.F.R. § 166.110
[3] 21 C.F.R. § 166.110 (a)(2)

3

18.    For over 150 years, butter faced a similar rival, "real" margarine, which claimed superiority based on the nutritional fads of the day.[4]

19.    Margarine is made by converting vegetable oils from liquid to solid through hydrogenation, fractionation and interesterification, in the presence of chemical and enzymatic catalysts.

20.    Over time, margarine made inroads as its manufacturers copied butter through fortification with Vitamin A and being dyed yellow to trick unwary consumers, a practice which was banned by numerous states.[5]

21.    The Great Depression and World War II caused margarine consumption to increase, due to its lower cost, and the rationing and shortages of butter.

22.    Margarine's moment lasted almost five decades and its consumption surpassed butter's after World War II.

23.    This was due to its low price, convenience and nutritional fads of the day which warned against saturated fats in butter.

24.    Scientists would eventually discover that margarine contains trans-fats, caused by hydrogenation, which was more harmful than saturated fat, which was realized to not be harmful after all.

25.    Additionally, scientific consensus shifted from holding fat content responsible for the epidemic of health-related issues as opposed to other food components, such as sugar.

---

[4] Margarine vs. butter: one of history's hottest rivalries?, Rivalry: TMSIDK Episode 17 – Freakonomics, Podcast, 4 June 2017, accessed 12 November 2017; J.H. Young, *"'This Greasy Counterfeit'": Butter Versus Oleomargarine in the United States Congress, 1886*, Bulletin of the History of Medicine, Fall (1979), 53.3, pp. 392-414; J. Bourdieu et al., *"That elusive feature of food consumption": Historical perspectives on food quality, a review and some proposals*. Food and History, (2007) 5(2), 247-266; Distillations Science + Culture + History, Butter vs. Margarine: one of America's most bizarre food battles, Podcast, 14 November 2017.
[5] April White, *When Margarine Was Contraband*, JSTOR Daily, 24 Aug. 2017, accessed 15 October 2017; The Butter vs. Margarine Wars Sweep Vermont in 1900, New England Historical Society, accessed 10 November 2017.

26.    Recently, margarine has waved the grey (the natural color of margarine) flag of surrender, according to the NYU Professor of Nutrition Marion Nestle:

> Margarine has become a marker for cheap, processed, artificial, unhealthy food. The irony is hilarious. Unilever went to a lot of trouble to formulate healthy margarines, but the zeitgeist has caught up with them.[6]

27.    Professor Nestle was referring to the decision by Unilever – the world's largest margarine producer – to sell its "spreads" division.

28.    In its wake, "plant-based" "butters" have arisen that tout their nutritional superiority (plant is used as a reference to superior health, etc.) vis-à-vis butter, in the same way the technologically advanced margarine industry did in its day.

29.    However, the Products are inferior substitutes for butter and margarine because:

(i)     they are displayed for sale adjacent to margarine and butter in the dairy section of a place where foods are sold,

(ii)    contain pictorial representations, imagery or references to these products on packages that indicate the uses and functionality are identical to common uses of margarine and butter and

(iii)   directions for use compare the products to margarine and butter.

30.    Due to the substantial purported similarities and the representations which promote substitution between the Products, reasonable consumers will expect that the Products are nutritionally equivalent to butter or margarine, when they are inferior – lacking vitamin A, D, E and calcium.[7]

31.    It is false and misleading for the Products to not be labeled as an imitation (whether of butter or margarine) in a manner as prominent as it promotes its equivalence to butter.

---

[6] Why the King of Margarine Wants Out, Justin Fox, Bloomberg, 6 April 2017, accessed 15 November 2017.
[7] 21 C.F.R. § 101.3(e)(4)

32.    The Products' performance characteristics include physical properties (e.g., melting point), organoleptic characteristics (e.g., texture, aroma, and taste), functional properties (e.g., spreadability, and shelf life) are inferior to those of butter

33.    Defendant knows that consumers' affinity for butter is associated with its simplicity as seen by the ingredients used to make butter – cream, salt or both – whereas "plant-based butter" contains a host of ingredients like nuts and highly processed lauric oils.

34.    Plaintiff and reasonable consumers expected the Products to resemble butter in the aforedescribed ways and were deceived due to the characteristics and attributes of the Products.

35.    Excluding tax, the Products cost no less than $6.99 per Product, a premium price compared to similar products.

<u>Jurisdiction and Venue</u>

36.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

37.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

38.    This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

39.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

40.    A substantial part of events and omissions giving rise to the claims occurred in this District.

<u>Class Allegations</u>

41.    The classes consist of all consumers in the following states: <u>all</u>, <u>New York</u> who

6

purchased any Products with actionable representations during the statutes of limitation.

42.    A class action is superior to other methods for fair and efficient adjudication.

43.    The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

44.    Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

45.    Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

46.    Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

47.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

48.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

49.    Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

50.    Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

<u>Parties</u>

51.    Plaintiff is a citizen of Suffolk County, New York.

52.    Defendant is a Delaware corporation with its principal place of business in Sonoma County, California.

53.    In 2017 and/or 2018, plaintiff purchased one or more of the Products for personal

consumption, for no less than $6.99 per product, excluding tax, within this district and/or State.

54.    Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

## New York General Business Law ("GBL") §§ 349 & 350

55.    Plaintiffs incorporates by references all preceding paragraphs.

56.    Defendant's representations are false, unfair, deceptive and misleading

57.    Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

58.    Plaintiff desired to purchase products which were as described by defendant.

59.    The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

## Negligent Misrepresentation

60.    Plaintiff incorporates by references all preceding paragraphs.

61.    Defendant misrepresented the composition of the Products.

62.    Defendant had a duty to disclose and/or provide a non-deceptive description of the Products and knew or should have known same were false or misleading.

63.    This duty is based, in part, on defendant's co-opting of one of the most valuable brands in food - butter.

64.    Defendant negligently misrepresented and/or negligently omitted material facts.

65.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

66.    Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

Breach of Express Warranty and Implied Warranty of Merchantability

67.   Plaintiff incorporates by references all preceding paragraphs.

68.   Defendant manufactures and sells products which purport to contain butter and/or resemble butter in the ways described – nutritionally, functionally, etc..

69.   Defendant warranted those aspects to plaintiff and class members when this was not truthful and was misleading.

70.   The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

71.   Plaintiff and class members relied on defendant's claims, paying more than they would have.

Fraud

72.   Plaintiff incorporates by references all preceding paragraphs.

73.   Defendant's purpose was to mislead consumers who seek foods that are healthy, high in nutrients and less processed.

74.   Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

Unjust Enrichment

75.   Plaintiff incorporates by references all preceding paragraphs.

76.   Defendant obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE,** plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant(s) to correct such practices to comply with the law;

3.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

4.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

5.  Such other and further relief as the Court deems just and proper.

Dated:   October 30, 2018

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
891 Northern Blvd., Suite 201
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

Levin-Epstein & Associates, P.C.
Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
(212) 792-0046
joshua@levinepstein.com

Paskowitz Law Firm, P.C.
Larry Paskowitz
208 East 51st Street, Suite 380
New York, NY 10022
(212) 685-0969
lpaskowitz@pasklaw.com

2:18-cv-06079
United States District Court
Eastern District of New York

Jasmine Brown individually and on behalf of all others similarly situated

Plaintiffs

- against -

Miyoko's Kitchen, Inc.

Defendant(s)

# Complaint

Sheehan & Associates, P.C.
891 Northern Blvd., #201
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  October 30, 2018

/s/ Spencer Sheehan
Spencer Sheehan